**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v.                             ) | CR. NO. 1:06cr197-MEF-CSC |
| ) | |
| **RODERICK CHARLES MELVIN** ) | |

**UNITED STATES' OBJECTION TO THE**
**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Comes now the United States of America, by and through Leura G. Canary, United States Attorney for the Middle of Alabama, and objects to the Recommendation of the Magistrate Judge file on November 14, 2006, (Doc. 18), and in support of the objection submits the following:

**I.     Background**

On August 15, 2006, Roderick Charles Melvin ("Melvin") was charged in a one-count indictment with being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1). Melvin filed a motion to suppress evidence seized in this case based upon an alleged violation of the Fourth Amendment to the United States Constitution, arguing the illegality of the car stop. (Doc. 13). The government filed its response on October 23, 2006. United States Magistrate Judge Charles S. Coody held an evidentiary hearing on October 25, 2006.

At the suppression hearing the government presented the testimony of Rebecca Hutto and John Herring, both senior residents of the Grimes Community. In addition, the government presented the testimony of Officer Tim Crooks and Special Agent, Timothy Fitzpatrick. On November 14, 2006, the Recommendation of the Magistrate Judge was filed granting the defendant's motion to suppress the evidence, stating that "[b]ased upon the totality of the

circumstances, the court concludes that Crooks' investigatory stop of Melvin was not supported by articulable, reasonable suspicion and, therefore, was in violation of the Fourth Amendment." Doc. 18, at p. 9. The government submits its objection to the Recommendation of the Magistrate Judge. The focus of the government's objection is that the facts as stated in the Recommendation of the Magistrate Judge do not paint the "whole picture", as required in *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416 (1990), and cited by the court. The government respectfully submits that the court's findings of fact does not address Officer Crooks' knowledge which is contained in the early portion of his testimony. (See, Evid. Hr'g. Tr. pp. 6 - 8, 12, 26 - 27, 30, 32, 33).

**II.    FACTS:**

On July 24, 2005, at approximately 5:00 p.m. Deputies Timothy Paul Crooks ("Crooks") and Ed Preston Fleshman ("Fleshman"), of the Dale County Sheriff's Office, had begun their 5:00 p.m. shift when they responded to a suspicious person call (a/k/a a"10-38" call) at the Grimes Petro Station on County Road 112, Dale County, Alabama. Crooks testified that he had received several suspicious person calls in the Grimes area within the past five to seven months prior to the July 24th call. (Evid. Hr'g Tr. at p. 6).[1] Crooks said that there had been several burglaries in that area in the past several months, including a burglary of Rebecca Hutto's residence. *(Id.* at 7). Prior to Crooks and Fleshman responding to the suspicious person call, there were other activities in the Grimes community that led to the last 10-38 or suspicious person call.

---

[1] The suppression hearing held on October 25, 2006, will be referred to as "Evid. Hr'g Tr." with the designated page number.

On Sunday, July 24, 2005, Rebecca Hutto, a resident of the Grimes Community testified that prior to getting out of bed, she heard someone knocking on her front door. (Evid Hr'g Tr. at p. 40). Mrs. Hutto said that she did not answer the door because she did not get up that early. (*Id.*). A few minutes later, Mrs. Hutto heard a knock at her back door. The individual went back to the front knocking and returned to the back door again. (*Id.*) Mrs. Hutto further described the knock as a "knocking - beating" on the front door. (*Id.* at 42). Mrs. Hutto did not answer the door nor say anything to alert that there was anyone home until the third time this person knocked on her back door. (*Id.*). Mrs. Hutto "eased" to her dining room because the person had gotten into the storm door and she was "scared."[2] (*Id.* at 42).

Mrs. Hutto heard the person hitting on the door "so hard" she knew he had gotten behind the storm door. (*Id.* at 43). She hollered and asked, "what do you want." (*Id.*). The person stated that he wanted to use the phone, to which Mrs. Hutto replied that she did not have a phone. (*Id.*) Mrs. Hutto saw that the person wore on a red shirt and a backpack. (*Id.* at 42). Mrs. Hutto then went into her hallway to use the phone so that the person could not hear her call her sister-in-law, Mary Steele.[3] Mrs. Hutto initially testified that she did not give Ms. Steele a description of the person. When Mrs. Hutto's memory was refreshed, Mrs. Hutto did recall that Ms. Steele telephoned her to say that she had seen the same person. (*Id.* at 44 - 45). Mrs. Hutto said the person knocking at her door made her afraid. (*Id.*). On cross examination, and with no objection from the government, Mrs. Hutto testified that Ms. Steele told her that "she had seen the person

---

[2] Mrs. Hutto's home had been burglarized in March. (*Id.* at 45).

[3] Mary Steele did not testify since she was in Panama City because of the death of her nephew and his son. (Evid. Hr'g Tr. p. 43).

3

that matched the description of what [Mrs. Hutto] had said". (*Id.* at 45). Mrs. Hutto said the person had on a red shirt, which she called a muscle shirt with no sleeves, and he had a black backpack. (*Id.* 47-48). Mrs. Hutto also observed the person go towards Ms. Steele's house when he left her residence. (*Id.* at 48-49).

John Herring testified, without objection, that he learned from Ms. Steele that a person had tried to break into her sister-in-law's house that day, and that she had seen the "guy". (*Id.* at 52). Mr. Herring also testified that Ms. Steele described the person and told him where the person had gone. (*Id.*). Mr. Herring went looking for the person. (*Id.*). Mr. Herring observed the person in several locations including behind the store, behind a church in a barbeque pit, and across the street behind other houses. (*Id.* at 52-53). Mr. Herring described the bag as a duffle bag. (*Id.* at 53). Although there were two pay phones mounted on the wall outside of the Petro Store, Mr. Herring did not observe the persons attempt to use the phone. (*Id.* at 54). Ms. Steele was present during the time this suspicious person came to the store. (*Id.* at 54).

Herring was present when Ms. Steele called the police, so that he expected the police to arrive. (*Id.* at 55). Mr. Herring and Ms. Steele watched this suspicious person get into a vehicle, and it was the same person that Mr. Herring had observed earlier go behind the store, church and other houses. (*Id.* at 58, 62) It should be noted that Grimes is a small community and a stranger is noticed. (*Id.* at 57). Mr. Herring acknowledged that the person was an African-American, a black male wearing a red and black shirt, and jogging or warmup suit. (*Id.* at 58-59). When the police came, Mr. Herring told Officer Crooks, that the person he was looking for had just gotten into a car, which Herring pointed out to the officer. (*Id.* at 12, 61)

Officer Crooks obviously had difficulty recalling every detail of the stop which occurred

approximately a year and a half ago, as did the two elderly government witnesses, Mrs. Hutto and Mr. Herring.  Crooks did recall that when he started his shift at approximately 5:00 p.m. on Sunday, July 24, 2005, he learned from a fellow officer that the police had gone to the small community of Grimes (Evid. Hr'g. Tr. at 7-8, 27) a couple times that day on a 10-38 persons call (a suspicious persons call).  (*Id*. at 7-8).  Crooks already had personal knowledge that there were several burglaries in the Grimes community in the past several months, including a burglary he personally responded to at the home or Rebecca Hutto.  (*Id*. at 6 - 8).  Initially, Crooks could not remember a specific description that was given to him by a fellow officer changing shifts (*Id.* at 8, 26, 30, 32).  Crooks did remember that the suspicious person "was a black male in a red shirt and cargo pants was what came out."  (*Id.* at 33).  After Crooks made the stop, the defendant, Roderick Charles Melvin, was wearing clothing that matched the description given to him at the start of his shift.  In addition, Crooks had been told that this suspicious person had been testing doors and knobs in the Grimes area.  (*Id.* at 34-36).  The arrest photograph of the defendant shows he had on a red shirt.  (*Id.* at 37).

### III.    Legal Discussion

In *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416 (1990), (quoting *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981), the Supreme Court held the following:

> Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.  *Adams v. Williams,* demonstrates as much.  We there assumed that the

> unverified tip from the known informant might not have been reliable enough to establish probable cause, but nevertheless found it sufficiently reliable to justify a *Terry* stop. (citations omitted). Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors-quantity and quality– are considered in the "totality of the circumstances–the whole picture," (citations omitted), that must be taken into account when evaluating whether there is reasonable suspicion.

*White* at 330.

In this case, information one shift of deputies passes on the to the next shift of deputies is of sufficient quality to satisfy reasonable suspicion since law enforcement must constantly communicate and rely on the activities of fellow law enforcement officers. Ms. Steele told Mr. Herring that she had seen the guy go behind the store. (*Id.* at 52). Mr. Herring walked behind the store and also saw the guy Ms. Steele had described. (*Id.*). Contrary to footnote #2, Mr. Herring testified that Ms. Steele called the police from the Petro, although he did not hear what she told the dispatcher. (*Id.* at 55, lines 11-13). Contrary to footnote #3, Crooks did recall that the suspicious person was a black male wearing a red shirt and cargo pants. (*Id.* at 33, lines 21-24). Herring knew the deputies were looking for the suspicious person because he was present when Ms. Steele called the police and a reasonable person would expect the police to come out.

In *Adams v. Williams*, cited above, the Supreme Court held that,

> The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape....A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

*Adams* at 145.

Moreover, the suspicious person had entered a vehicle which was leaving the area. The deputy was aware that the suspicious person had been in the Grimes area going behind houses, testing and trying door knobs. Although much of the evidence is circumstantial, the government argues that a totality of these facts would lead a reasonable officer to an articulable and reasonable suspicion sufficient to justify a *Terry* stop.

Respectfully submitted on this 5th day of December 2006.

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/Tommie Brown Hardwick
TOMMIE BROWN HARDWICK
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334) 223-7280
Fax: (334) 223-7135
E-mail: tommie.hardwick@usdoj.gov
ASB4152 W86T

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 1:06cr197-MEF-CSC |
| | ) | |
| RODERICK CHARLES MELVIN | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on December 5, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Kevin L. Butler, Esq.

                Respectfully submitted,

                /s/Tommie Brown Hardwick
                TOMMIE BROWN HARDWICK
                One Court Square, Suite 201
                Montgomery, AL 36104
                Phone: (334)223-7280
                Fax: (334)223-7135
                E-mail: tommie.hardwick@usdoj.gov
                ASB4152 W86T